**Appeal No. 24-12546-D**

**United States Court Appeals
for the Eleventh Circuit**

| | |
|---|---|
| Frank L. Gargett, Jr., | ) |
|     Plaintiff-Appellant, | ) |
| v. | ) |
| Florida Department of | ) |
| Juvenile Justice, | ) |
|     Defendant-Appellee. | ) |

---

## APPELLANT'S INITIAL OPENING BRIEF

---

On Appeal from the United States District Court for the Middle District of Florida, Tampa Division, Honorable Judge Virginia M . Hernandez Covington, presiding

/s/ James E. Aker

3400 S. Tamiami Trail, Ste. 101

Sarasota, Florida 34239

Ph: (941) - 780-2809

E-mail: jimaker2537@gmail.com

Fla. Bar No. 131026

and

/s/ E. Dusty Aker, Esq.

DUSTY E. AKER, ESQ., FBN: 657166

3400 S. Tamiami Trail, Ste. 101

Sarasota, Florida 34239

Telephone: (941) 462-2020

Email: dustyaker@akerlawfirm.com

Co-Counsels for Appellant

Appeal No. 24-12546-D
*Gargett v. Florida Department of Juvenile Justice*

## **Certificate of Interested Persons and Corporate Disclosure Statement**

Appellant, Frank L. Gargett, Jr., submits his Certificate of Interested Persons and Corporate Disclosure Statement ("CIP") and states that the following are interested persons having an interest in the outcome of the case and appeal as defined by FRAP 26.1 and 11th Cir. R. 26.1-1:

Aker, James E., co-counsel for Appellant.

Aker, E. Dusty, counsel for Appellant.

Covington, Virginia M. Hernandez, Trial Judge.

Stranzl, Benjamin S., counsel for Appellee.

Ferreiro, Nicholas, counsel for Appellee.

Wilson, Thomas G., Trial Magistrate.

There are no corporate parties.

## **Statement Regarding Oral Argument.**

Appellant believes that oral argument should be permitted. If this Court affirms the district court, it would be against the trend and rationale of recent Supreme Court decisions and directly in conflict with at least two other Circuit

Court of Appeals decisions, as well as inconsistent with the rationales of precedent in this Court.   Plaintiff believes that oral argument would be helpful to the Court. Plaintiff requests oral argument.

## Table of Contents

**Topic**                                                                                                           **Page**

Certificate of Interested Persons                                                                                    2

Statement Regarding Oral Argument                                                                                    2

Table of Contents                                                                                                    3

Table of Citations                                                                                                   5

Statement Regarding Adoption of Brief of Other Party                                                                 9

Statement of Subject-Matter and Appellate Jurisdiction                                                               9

Statement of Issues Presented for Review                                                                             10

Statement of the Case:                                                                                               10

    The Course of Proceedings and disposition in the court below                                10

    Statement of the Facts

Statement of the standard or scope of review for each contention      13

Summary of the Argument      14

Argument and Citations of Authority:      19

     Defendant Waived the Eleventh Amendment by Litigation Conduct      19

     The Eleventh Amendment Immunity does not Apply to Claims for
     Prospective Relief      39

     Congressional Abrogation of the Eleventh Amendment as to ADEA
     Claims      45

     Claim for Attorneys' Fees are not Barred by
     Eleventh Amendment Immunity      46

Conclusion      46

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements      46

Signature Block for Counsels      47

Certificate of Service      48

# Table of Citations

**Cases:**                                                              **Page**

*Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514 (2006)                              25

*Beckham v. National Railroad Passenger Corp,* 569 F. Supp. 2d
 542, 552 (D. MD. 2008)                                                       25

*Bell-Babineau* v. Florida Dep't of Juvenile Justice,
 2014 LEXIS 9076 (M.D. Fla. 2014)                                        20. 38

*Brown v. Fla. Dep't of Revenue office of Child Support Enforcement,*
697 Fed. Appx. 692, 693 (11th Cir. 2017)                                      36

*Bd. of Regents of Univ of Wis Sys. v. Phx Int'l Software, Incl,*
 653 F.3d 448, 463-64 (7th Cir. 2011)                                         34

*Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)                42

*Castro v. Ky. Educ. Student Loan Corp,* 2017 LEXIS
*4 (S.D. Fla. 2017)                                                           33

*Cross v. Ala. Dep't of Mental Health & Mental Retardation*,
 49 F.3d 1490, 1502 (11th Cir, 1995)                                          42

*Daley v. Scott*, 2016 LEXIS 83735 *3-7 (M.D. Fla. 2016)                      27

Ex Parte Young, 209 U.S. 123 (1908)                                      32, 39

*Fla. Virtual Sch. v. K12, Inc,* 2023 LEXIS 176971
(M.D. Fla. 2023), Judge Presnell presiding                                    33

*Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 466-67 (1945)       19

*Garrity v. Sununu,* 752 F.2d 727, 738 (1st Cir. 1984)                        24

*Frederick v U.S.*, 386 F.2d 481, 488 (5th Cir. 1967)                         33

*Hans v. Louisiana,* 134 U.S. 1 (1890)     19

*Haven v. Bd. of Trs. of Three Rivers Reg'l Library Sys*., 69 F. Supp. 3d 1359 (S.D. Ga. 2014)     17, 36

*Hill v. Blind Industries Serv., Maryland,* 179 F.3d 754, 760 (9th Cir. 1999)  14,19,22

*Hutto v. Finney,* 437 U.S. 678, 694 (1979)     46

*Idaho v. Coeur d' Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997)     21,32

In *Hunter v. Hamilton Cnty. Bd. of Elections*,     31
 850 F. Supp. 2d 795, 801-02 (S.D. Ohio 2012)

*In re Kuck*, 116 B.R. 821 (S.D. Fla. 1990)     46

*Kentucky v. Graham*, 473 U.S. 159 (1985)     41

*Kerce v. Fla. Dep't of Law Enforcement/Capital Police,*
2017 LEXIS 227933 (N.D. Fla. 2017)     44

*Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000)     45

*Ku v. Tennessee*, 322 F.3d 431 (6th Cir. 2003)     15, 30

*Lane v. Cent. Ala. Cmty. College,* 772 F.3d 1349, 1351 (11th Cir. 2014)     43

*Lapides v. Bd. of Regents of the Univ. Sys of Ga,* 535 U.S. 613, 618 (2002) 14, 20, 2 5, 31, et. seq.

*Lassiter v. Alabama A & M Univ*., 3 F.3d 1482 (11th Cir. 1993)     40

*Missouri v. Fiske*, 290 U.S. 18, 24 (1933)     19

*Molina v. Aurra Loan Servs.,* LLC, 635 Fed. Appx. 618, 621 (11th Cir. 2015) 13

*Nasca v. Rudowicz,* 2021 LEXIS 214210 *7 (M.D. Ga. 2021)     32

*Petty v. Tennessee-Missouri Bridge Comm'n,* 359 U.S. 275, 276 (1959)     20

*Popowski v. Parrott,* 461 F.3d 1367m 1372 (11th Cir 2006)     13

*Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005)     31

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95 (1998)     17, 18, 34

*Stroud v. McIntosh,* 722 F.3d 1294 (11th Cir. 2013)     32

*Tracy v. Fla Atl. Univ. Bd. of Trs*., 2017 LEXIS 190505
(S.D. Fla. 2017)("*Tracy II*")     44

*United States v. Cotton*, 535 U.S. 625, 639 (2002)     25

*United States ex rel Saldivar v. Fresenius Med. Care Holdings, Inc.,*
157 F. Supp. 3d 1311, 1313 n. 1 (N.D. Ga. 2015)     25

*Vasseur v. Valdosta State Univ*., 2023 LEXIs 188405 *13-14
(M.D. Ga. 2023)     38

*Verint Ams. v. Regents of the Univ. of Mich.*,
2020 LEXIS 148690 *3 (N.D. Ga. 2020)     24, 34

*Wis. Dep't of Corr. v.. Schacht,* 524 U.S. 381 (1998)     14, 20, 21

*Williams*, 477 F.3d 1282, 1301 (11th Cir. 2007)     31

**Rules:**

FRAP 26.1     2

11th Cir. R. 26.1-1:     2

**Statutes:**

U.S.C. § 1331     9, 11

28 U.S.C. § 1291     9

28 U.S.C. § 1367     11

The Age Discrimination in Employment Act ("ADEA")

29 U.S.C § 621, *et* seq.,                                                   11


Florida Civil Rights Act of 1992 ("FCRA"),
Chapter 760, Florida Statutes,                                               11


The Family Medical Leave Act of 1993 ("FMLA"),
29 U.S.C. Sections 2611, *et seq.* and 42 U.S.C. § 1981a.                    11

**U.S. Constitution:**

Eleventh Amendment                                                          19

**<u>Law Reviews:</u>**

"Waiver-in-Litigation: Eleventh Amendment Immunity
and the Voluntariness Question," Volume 63, No. 3, 2002                      24

.

**Statement Regarding Adoption of Brief of Other Party.** This Brief does not adopt any other Brief.

**Statement of Subject-Matter and Appellate Jurisdiction**

(1)     The basis for the district court's subject-matter jurisdiction is that this is a civil action for violation of laws of the United States, i.e., the federal statute called the ADEA.  As such, the action raises questions under the federal statutes and federal laws.  The district court has jurisdiction pursuant to 28 U.S.C. § 1331, which provides that the district court has jurisdiction of civil actions arising under, *inter alia,* the laws of the United States.

(2)      The basis for the court of appeal's jurisdiction is 28 U.S.C. § 1291,  which provides that courts of appeals have jurisdiction, *inter alia,* of appeals from all final decisions of the district courts of the United States.  The Order and Final Judgment appealed in this matter are final decisions.

(3) The filing dates which establish the timeliness of the appeal are that the Order being appealed was filed on 7-19-24 (R 165)[1] and the Judgment on that Order was filed 7-19-24 (R 167) . This appeal was filed on 8-6-24 (R 169), within the 30 days allowed.

(4) This appeal is from a final Order and a Judgment that disposes of all the parties' claims.

## Statement of the Issues Presented for Review.

Appellant presents the following issues for review:

1. Whether Defendant waived the Eleventh Amendment by its litigation conduct?

2. Whether Plaintiff's claim for reinstatement is barred by the Eleventh Amendment?

3. Whether Congress abrogated the Eleventh Amendment  as to ADEA claims?

4. Whether Plaintiff is entitled to attorneys' fees if it  prevails?

---

[1] Citations to the Record,  established in the lower court and the Record for this appeal,  will be by the lower court's progress docket number as  "R,"  followed by the lower clerk's progress docket number.  The trial court's Clerk transmitted the Clerk's progress docket sheets to this Court on 8-7-24 as R 170, containing docket entries from 1-170.   Citations to the prior appellate record in this case will be by App, followed by the docket number of the record in this Court's Case No. 21-13430.

## Statement of the Case

## The Course of Proceedings and Disposition in the Court Below.

1.     Plaintiff filed this age discrimination claim on 8-16-19 in the United States District Court for the Middle District of Florida, Tampa Division, Case No. 8:19-cv-02051-VMC-TGW ("Federal Action").

2.     The Federal Action raised a federal question, of which the federal court had original jurisdiction under 28 U.S.C. § 1331, arising under the laws of the United States, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C § 621, *et* seq., The Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. Sections 2611, *et seq.* and 42 U.S.C. § 1981a.

3.     The District Court had supplemental jurisdiction under 28 U.S.C. § 1367 for the Plaintiff's following state law claims under: the Florida Civil Rights Act of 1992 ("FCRA"), Chapter 760, Florida Statutes, because the state claims were so related to the federal claims in the Federal Action that were within the original jurisdiction of the federal court that they formed part of the same case or controversy under Article III of the United States Constitution.

4.     The federal court entered an Order granting a summary judgment to Defendant on the merits on all three counts on 9-17-21 (R 91) and a Judgment for Defendant on 9-20-21. R 93.

5.     Plaintiff appealed the Order and Judgment on 10-5-21 to this Court, which

was assigned USCA No. 21-13430 (the "First Appeal").

6.      On 1-5-24, the Eleventh Circuit entered a written opinion affirming the dismissals of the retaliation and FMLA claims, but reversed the summary judgment granted against Plaintiff on the age discrimination claim and remanded it to the federal court for trial. R 104.  The 11th Circuit Mandate was issued on 4-1-24.  R 110.

7.      On 4-3-24, the District Court set the age discrimination for trial on the July 2024 trial docket.  R 112.

8.      On 6-6-24, the Plaintiff and the Defendant, through their attorneys, executed a Joint Pretrial Statement ("JPTS"), in which they agreed,

> "The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 with regard to the Plaintiff's civil action arising under the laws of the United States including: the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with regard to the Plaintiff's civil action arising under the laws of the State of Florida including the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01-760.11, as such claims are so related to the claims within the Court' original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

9.      However, on 6-13-24, Defendant filed a motion to dismiss the Federal Action on the grounds that Defendant was entitled to immunity from suit in the federal court under the Eleventh Amendment to the U.S. Constitution.   R 145.  On the same day, the court re-scheduled the trial to the August 2024 term.  R 146.  Defendant filed a supplemental motion to dismiss on 6-14-24, which was not different than the motion

to dismiss filed on 6-13-24. R 149.

10.     On 6-27-24. Plaintiff filed a Response to the motion to dismiss. R 159-160. On 7-8-24, Defendant filed a Reply to Plaintiff's Response to the motion to dismiss. R 162. On 7-15-24, Plaintiff filed a Sur-Reply to Defendant's Reply. R 164.

11.     On 7-19-24, the district court entered an Order granting the Defendant's supplemental motion to dismiss and entered a Judgment for Defendant on the same day. R 165, 167.

12.     This Order and Judgment were appealed to this Court on August 6, 2024. R 169. On 8-7-24, this Court docketed this Civil Appeal as Case No. 24-12546   .

## Statement of the Facts

There are no facts that are material to this appeal other than the pleadings and papers filed in the lower court. The issue is a legal one—did the Defendant waive the 11th Amendment to the U.S. Constitution concerning immunity by its litigation conduct in this case, thereby consenting to litigation against it in the district court.

## Statement of the standard or scope of review for each contention

This Court reviews a district court's grant of a motion to dismiss for lack of subject-matter jurisdiction *de novo*. *Molina v. Aurora Loan Servs., LLC,* 635 Fed. Appx. 618, 621 (11th Cir. 2015); *Popowski v. Parrott,* 461 F.3d 1367, 1372 (11th Cir. 2006). The district court granted Defendant's motion to dismiss on subject-

matter grounds. All other issues in this action are questions of law to be decided *de novo.*

## Summary of the Argument

The. Supreme Court and federal courts have recently stated that the 11th Amendment defense is not a **jurisdictional** bar that can be raised at any time but is more akin to a personal jurisdiction defense that should be raised at the threshold and may be waived by consent to litigation in the federal court by virtue of its conduct in litigating in the federal court. Especially on the merits. That is what happened in the case at bar.

The impetus for these recent decisions was Justice Kennedy's concurring opinion in *Wis. Dep't of Corr. V. Schacht,* 524 U.S. 381 (1998)**. Justice Kennedy opined that "inferring waiver from the failure to raise the objection at the outset of the proceedings, (whereby the) state would be prevented from gaining an unfair advantage. *Id*. at 395.**

The Ninth Circuit Court of Appeals adopted Justice Kennedy's suggestion in an action commenced in the district court, in which the State appeared and participated in extensive litigation actions, "We hold that BISM consented to jurisdiction in federal court by actively litigating this action on the merits, while

waiting until trial to first asserting Eleventh Amendment immunity. *Hill v. Blind Industries Serv., Maryland* ("BISM"), 179 F.3d 754, 756 (9th Cir. 1999),

The Supreme Court in *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002) expressly adopted the theory of Justice Kennedy's concurring opinion. *Lapides* stated that a state can waive its 11th Amendment immunity by its "litigation conduct." *Id*. Although *Lapides* dealt with an action removed by the State to federal court, *Lapides* did not limit its opinion or the rationale for its opinion by stating, "The relevant 'clarity' here must focus on the litigation act the State takes that creates the waiver.'" *Id*. *Lapides* states that the rationale for waiver of the 11th Amendment is based upon avoiding unfairness and not upon a State's actual preference or desire to favor selective use of immunity to achieve litigation advantages. *Id*.

The Sixth Circuit Court of Appeals, in *Ku v. Tennessee*, 322 F.3d 431 (6th Cir. 2003), stated that in two recent cases, the U.S. Supreme Court was moving in the direction of concluding that the 11th Amendment immunity defense should be treated in the same way courts have traditionally treated personal jurisdiction rather than as a matter of subject matter jurisdiction, i.e., the two cases are *Schacht* and Justice Kennedy's concurring opinion therein and *Lapides*, *supra*. In *Ku,* the State appeared without objection to the district court's jurisdiction, defended the case on the merits, engaged in substantial discovery and filed a motion for summary

judgment. *Id.* at 432. It was only after a final adverse ruling by the district court that the State raised the 11th Amendment immunity defense. *Id.* The district court ruled that the State had waived the defense by appearing and defending on the merits. *Id.*

Defendant participated in this action over 4 years and 7 months from the time that it filed its Answer on 11-4-19 (R 20) to 6-13-24 when it filed its motion to dismiss on jurisdiction grounds, then mentioning the 11th Amendment for the first time. . (R 145). Had Defendant timely raised the 11th Amendment defense at the threshold of the case when it filed its Answer on 11-14-19, as suggested by the trial judge and required by the authorities, Plaintiff would have had two years to re-file his FCRA claim in the State court by the expiration of the 4-year statute of limitations on 8-18-21. Had Defendant filed its motion to dismiss by the time that the Third Amended Case Management and Scheduling Order required it to be filed by 3-8-21 (R 47), Plaintiff would have still had 5 months to re-file in State court. .

During those 4 years and 7 months, Defendant aggressively and actively participated in the case as described in the argument below, including inviting the court to rule on its motion for summary judgment on the merits (which the court accepted) and representing to the court twice in the executed Joint Pretrial Statements that the court had jurisdiction. Defendant moved for costs on 10-3-21. R 94. The court taxed costs for Defendant for $4,794.87 (R 102-103. This Court

reversed the summary judgment for the Defendant on 12-18-23 (App R 37) on the age discrimination claim. Finally, for the first time, Defendant filed a motion to dismiss raising the 11th Amendment on 6-13-24 (R145). The court granted the motion on 7-19-24 (R) 165. The initiation of the appeal in this Court followed on 10-5-21 . App R 1. This Court reversed the grant of summary judgment for the Defendant on 12-18-23. App R 36.

Defendant has consented to federal jurisdiction by its litigation conduct described above, and m more detail below in the Argument, in which it sought, a ruling on the merits in its favor As such, it has waived the 11th Amendment. This Court and the district courts in this Circuit have followed *Lapides* and its rationale. *Sys. v. Phx Int'l Software, Incl,* 653 F.3d 448, 463-64 (7th Cir. 2011)).

Defendant DJJ made a clear, unequivocal litigation choice to defend in federal court on the merits. As in In *Haven v. Bd. of Trs. of Three Rivers Reg'l Library Sys*., 69 F. Supp. 3d 1359 (S.D. Ga. 2014), "The court may find that the Library's Eleventh Amendment immunity strips it of jurisdiction to hear the case, or it may reach the **merits** of the Library's motion for summary judgment, **but it cannot do both.**" *Id*. at 1364. Here, the DJJ wants it both ways—heads I win, tails you lose. The use of the 11th Amendment in a selective fashion to achieve an unfair advantage and result is not tolerated pursuant to the authorities cited herein.

This Court has held, **"[a]n assertion of _Eleventh Amendment_ immunity must be resolved before a court may address the merits of the underlying claims** _Seaborn v. Department of Corrections,_ 143 F.3d 1405, 1407 (11th Cir. 1998), **c**iting _Steel Co. v. Citizens for a Better Env't,_ 523 U.S. 83, 94-95 (1998)., Emphasis added. By allowing the court to rule on the merits of the DJJ motion for summary judgment, it cannot have it both ways, and the DJJ was foreclosing its jurisdiction argument

## ARGUMENT AND CITATIONS OF AUTHORITY

### Waiver of the  Eleventh Amendment by Litigation Conduct

The 11th Amendment states as follows:

'The Judicial power of the United Sates shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State."

U.S. Constitution, Eleventh Amendment.  The U.S. Supreme Court extended the 11th Amendment to suits brought by the State's own *Citizens.  Hans v. Louisiana,*  134 U.S. 1 (1890).

The "Eleventh Amendment immunity was traditionally characterized as a 'personal privilege which [the state] may waive at [its] pleasure.'"    *Hill v. Blind Industries  Serv., Maryland,* 179 F.3d 754, 760 (9th Cir. 1999), *citing Clark v. Barnard,* 108 U.S. 436, 447 (1883).  The same view was taken by *Missouri v. Fiske*, 290 U.S. 18, 24 (1933).

 In *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 466-67 (1945), *Ford* raised the 11th Amendment for the first time when arguing before the Supreme Court.  *The Ford* court stated that the 11th Amendment  defense sufficiently partakes of the nature of a **jurisdictional** bar so that it need not be raised in the trial court.

However, *Ford* agreed on the record that **if** the attorney of record for the Department of Treasury had authority to waive the 11th Amendment, **then he did so by his actions.** *Id.* at 467. The issue in *Ford* was whether the attorney had such authority to waive, **not** whether the 11th Amendment could be waived, and the Supreme Court found that he had no authority to waive the 11th Amendment. *Id.* 469. *Ford's* statements about the 11th Amendment being able to be raised at any time was *dictum*. *Hill* at 761. Fourteen years after *Ford*, the U.S. Supreme Court reiterated the traditional rule that a state waives its 11th Amendment immunity " by a general appearance in litigation in federal court." *Petty v. Tennessee-Missouri Bridge Comm'n,* 359 U.S. 275, 276 (1959). *Ford* was also overruled by *Lapides v. Bd. of Regents of the Univ. Sys of Ga,* 535 U.S. 613, 618 (2002).

A heavily cited case in which the U.S. Supreme Court voiced its disagreement with the concept that the 11th Amendment cannot be waived and can be raised at any time was *Wis. Dep't of Corr. V. Schacht,* 524 U.S. 381 (1998). *Schacht* was cited with approval by Judge Kovachevich in *Bell-Babineau* v. *Florida Dep't of Juvenile Justice, 2*014 LEXIS 9076 (M.D. Fla. 2014). Judge Kovachevich stated, 'Unlike most subject matter jurisdiction issues, which cannot be waived by the parties, and must be raised by the court on its own initiative, the **<u>Eleventh Amendment</u>** does not automatically deprive a court of jurisdiction," citing *Schacht.* Judge Kovachevich stated, "The **<u>Eleventh Amendment</u>** grants the State a legal

power to assert a sovereign immunity defense should it choose to do so."  *Bell-Babineaux* at  * 11.  The DJJ chose to timely assert that defense in *Bell-Babineaux* by the  same counsel as it had in the instant case, when its answer was filed, Samuel R. Mandelbaum.  R 20.

In *Schacht,* the court stated, "The Eleventh Amendment, however, does not automatically destroy original jurisdiction.  Rather, the Eleventh Amendment  grants the State a legal power to assert a sovereign immunity defense should it choose to do so.  The State can waive the defense."  *Id.* at 389.

Justice Kennedy stated in his  concurring opinion in *Schacht* that the 11th Amendment defense should be raised early, or else it is waived.  *Id*. at 395.  This opinion became a citing factor in later U.S. Supreme Court and federal court's decisions regarding waiver by litigation conduct.  Justice Kennedy expressed his doubts about the propriety of allowing the 11th Amendment to be raised at any time. *Id*. at 394.   Justice Kennedy stated that the past departure from the usual rules of waiver stemmed from the hybrid nature of the 11th Amendment defense.  *Id*.  This hybrid nature is because "[i]n certain respects, the immunity bears substantial similarity to personal jurisdiction requirements, since it can be waived and courts need not raise the issue *sua sponte,"* citing *Patsy v. Board of Regents of Fla,* 457 U.S. 496, 516, n. 19 (1982).  *Id.* "Permitting the immunity to be raised at any stage of the proceedings, in contrast, is more consistent with regarding the *Eleventh*

*Amendment* as a limit on the federal courts' subject-matter jurisdiction." *Id.* Justice Kennedy stated that the court's precedents have not treated the 11th Amendment as non-waivable *Id.*, citing *Idaho v. Coeur d' Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997).

**Justice Kennedy suggested that the court modify its 11th Amendment jurisprudence by "inferring waiver from the failure to raise the objection at the outset of the proceedings, (whereby the) state would be prevented from gaining an unfair advantage.** *Id***. at 395.**

In *Hill v. Blind Industries Serv., Maryland* ("BISM"), 179 F.3d 754, 756 (9th Cir. 1999), the appellate court stated, "We hold that BISM consented to jurisdiction in federal court by actively litigating this action on the merits, while waiting until trial to first assert Eleventh Amendment immunity. *Id.* The court found that the following conduct in the non-removed action constituted consent to litigation in the federal court: filing a written consent to the magistrate to try the case; conducting discovery and moving to compel discovery and for sanctions; participating in the pre-trial conference; filing trial materials including a witness and exhibit list, proposed jury instructions and a trial memorandum, while waiting until the opening day of trial to assert for the first time that it is an arm of the state and that the Eleventh Amendment bars the action. *Id.* These facts are essentially identical to the facts in

the case at bar.   The *Hill* court denied the motion to dismiss,  and the case proceeded to a jury verdict for the plaintiff.  *Id*.

The *Hill* court stated that the defendant was trying to "hedge its bet" and wanted "the best of both worlds." *Id*.  The court stated that if the defendant prevailed at trial, it could withdraw its motion and let the jury verdict stand.   *Id.*  If the defendant lost at trial,  it could ask  to have the verdict set aside on the grounds that the action was barred by the 11th Amendment.  *Id*.   The court stated that such conduct undermines the integrity of the judicial system, wastes judicial resources, burdens jurors and witnesses, and imposes substantial costs upon the litigants.  *Id*. Notwithstanding its unfairness.

The *Hill* court stated that a party may gain an improper advantage through these tactics because  rulings can signal an adverse result to the defendant thereby causing the defendant to assert its 11th Amendment immunity after such rulings (such as the DJJ asserting its alleged privilege for the first time  after the 11th Circuit reversed the summary judgment which had been granted for the DJJ).  *Id* at 757. The court stated that timely disclosure provides a fair warning to the plaintiff, who can refile in state court as well as having other options.   *Id*. at 758.  Requiring the prompt assertion of the 11th Amendment minimizes the opportunity for improper manipulation of the judicial process.  *Id*.  The *Hill* court found Justice Kennedy's thoughtful concurrence in *Schacht* to be persuasive.  *Id*.  The *Hill* court stated that

to allow a defendant to litigate on the merits and then claim the 11th Amendment immunity would work a virtual fraud on the federal court and the opposing litigant. *Id.*

"A state may also waive its Eleventh Amendment immunity through conduct.*" Hill*, at 759 citing *Garrity v. Sununu,* 752 F.2d 727, 738 (1st Cir. 1984) ("The state has affirmatively complied with most of the court's implementation order — never once objecting on grounds of the eleventh amendment or sovereign immunity. We think it has effectively consented to the court's jurisdiction in respect to these nearly completed events"). "If the state does not wish to be in federal court, the state can quickly make its objections known and obtain a ruling on the defense." *Hill* at 759.

Professor Gil Seinfeld's Ohio State Law Journal article on "Waiver-in-Litigation: Eleventh Amendment Immunity and the Voluntariness Question," Volume 63, No. 3, 2002 (published just before the *Lapides* decision discussed below) suggested, "Thus, when states engage in conduct *in the courtroom* that might reasonably be construed as waiving immunity, it remains within the power of the federal courts to deem that waiver (of the Eleventh Amendment) has occurred." *Id.* at 890.

A state can waive its 11th Amendment immunity by its" **litigation conduct."** *Lapides v. Bd. of Regents of the Univ. Sys. of Ga*., 535 U.S. 613, 616 (2002); *Verint Ams. v. Regents of the Univ. of Mich.*, 2020 LEXIS 148690 *3 (N.D. Ga. 2020). "[w]aiver by litigation conduct does not require a showing of clear intent." *Beckham v. National Railroad Passenger Corp,* 569 F. Supp. 2d 542, 552 (D. MD. 2008). Because the 11th Amendment can be waived, it is not a "lack of subject matter jurisdiction defense as subject matter jurisdiction "can never be forfeited or waived." *United States ex rel Saldivar v. Fresenius Med. Care Holdings, Inc.,* 157 F. Supp. 3d 1311, 1313 n. 1 (N.D. Ga. 2015), citing *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514 (2006) and *United States v. Cotton*, 535 U.S. 625, 639 (2002). Because the 11th Amendment immunity is not a subject matter jurisdiction issue, it is not entitled to be raised at any time, and it should be timely raised at the threshold of any case.

"A state remains free to waive its Eleventh Amendment immunity from suit in federal court." *Lapides*, *supra,* at 618. The question in *Lapides* was whether removal to the federal court constituted waiver. The U.S. Supreme Court in *Lapides* found it anomalous or inconsistent for a State to invoke federal jurisdiction and to also claim 11th Amendment immunity. *Id.* at 619. *Lapides* stated, "[a] Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results*." Id.*

*Lapides* did not limit its holding to only those situations in which a party removes the action to federal court because, *inter alia,* its express ruling and its rationale and basis for its decision covers more instances than only a removal to federal court.

*Lapides* states, "[a]n interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the presumed recognition of the judicial need to avoid inconsistency, anomaly and unfairness and not upon a State's actual preference or desire, which might, after all, favor **selective use of immunity** to achieve litigation advantages," (emphasis added). Defendant's litigation conduct in the case at bar exposes a **selective use of immunity** to achieve its litigation advantages and results in unfairness, contrary to rationale of fairness set forth in *Lapides.*

*Lapides* states, "In large part the rule governing voluntary invocations of federal jurisdiction has rested upon the problems of inconsistency and unfairness that a contrary rule of law would create. A State being sued in federal court and voluntarily choosing not to make a timely motion to claim immunity under the Eleventh Amendment is just another form of **voluntary invocation of the federal court—Defendant consented to defending in federal court and waived the 11th Amendment by its extensive litigation conduct as described below.**

*Lapides* states, [t]he relevant "clarity here must focus on the litigation act the State takes that creates the waiver." *Lapides, supra,* at 620. This statement in

*Lapides* does not limit the definition of waiver to only removal cases and calls for the litigation acts undertaken by the defendant. In the case at bar, the Defendant engaged in the following litigation conduct which constituted its waiver of the 11th Amendment immunity:

a. Defendant filed no motion to dismiss at the outset of the case. R 20.

b. Paragraph 2 of the Complaint alleged, "This Court has original jurisdiction of this civil action under 28 U.S.C. § 1331." R 1. Defendant alleged in response to ₱ 2 of the Complaint by stating in ₱ 2 of its Answer, **"Defendant admits for jurisdictional purposes only."** R 20. Emphasis added.

c. Paragraph 3 of the Complaint alleged, "This Court has supplemental jurisdiction under 29 U.S.C. § 1367 for the following state law claims under Florida Civil Rights act of 1992 ("FRCA"" …." Defendant alleged in response to ₱ 3 of the Complaint by stating in ₱ 3 of its Answer**, "Defendant admits for jurisdictional purposes only**…." R 20. Emphasis added.

d. Defendant's Answer raised no 11th Amendment immunity defense. R 20. This is another flaw in Defendant's current motion. "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Rule 12(b). Defendant has waived the right to assert the 11th Amendment immunity by this rule alone. Although Rule 12(h)(3) entitled "Lack of Subject-Matter Jurisdiction" states, "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," the court erred in holding that it had no jurisdiction because Defendant's defense was not a subject matter defense because the 11th Amendment immunity can be waived and Defendant waived it in this action by its litigation conduct described herein.

e. Defendant included in its answer a defense that, "Plaintiff's complaint fails to state a claim upon which relief may be granted." R 20. There was no facts set forth in this defense, or anywhere in the Answer, to

give Gargett "fair notice" that Defendant is asserting any Eleventh Amendment defense. *Id*. "A defendant is required to plead sufficient relevant factual allegations connecting the defense to the [plaintiff's] claims in the case." *Daley v. Scott*, 2016 LEXIS 83735 *3-7 (M.D. Fla. 2016), Judge John E. Steel presiding. Such bare-boned pleadings are insufficient. *Id*.

f.  Defendant participated in two mediations at the trial court level. R 36 and 127 (once before the action was appealed to the 11th Circuit and once after the 11th Circuit reversed the summary judgment which been entered for the DJJ).

g.  The DJJ, through its attorneys, Samuel R. Mandelbaum and Nicolas E. Ferreiro, took two depositions of Plaintiff on 5-12-20 and 10-27-20. R 51-1 and 51-2. DJJ, through its same attorneys, defended four depositions on 11-5-20 and 11-20-20. R 51-3, 51-4, 51-7 and 51-9.

h.  Defendant agreed, before the summary judgment was entered, in the Joint Pretrial Statement which it executed on 5-6-21, "The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 with regard to Plaintiff's civil actions under the law of the United States including: the Age Discrimination in Employment Act ("ADEA") …. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with regard to Plaintiff's civil action arising under the laws of the State of Florida including the Civil Rights Act ("FCRA") …." R 79.

i.  On 1-28-21, Defendants filed a Motion for Summary Judgment ("MSJ") seeking affirmative relief from the Court and inviting it to rule **on the merits.** R 56.

j.  The Third Amended Case Management and Scheduling Order required all other motions to be filed by 3-8-21. R 47.

k.  On 3-8-21, the DJJ filed its first Motion in *Limine*. R 61. It filed no motion to dismiss based on the 11th Amendment on this deadline date, thereby failing to adhere to the deadline date.

l. The DJJ motion for summary judgment was orally heard by the Magistrate on 4-9-21. R 62. No mention was made of the 11th Amendment at that hearing.

m. On 9-17-21, the court entered an Order granting summary judgment to the DJJ **on the merits** and adopting the Magistrates Recommended Order after the parties had fully participated in the summary judgment hearing before the Magistrate on 4-9-21. R 91, 62.

n. On 10-3-21, Defendant filed a motion seeking affirmative relief from the trial court for a taxation of costs against Plaintiff because it won the summary judgment. R 94.

o. On 12-27-21, the Court entered an Order for costs for Defendant and against Plaintiff in the amount of $4,794.87. R 102, 103.

p. On 1-2-24, Defendant filed a motion seeking affirmative relief from this Court for a taxation of costs against Plaintiff in the form of Bill of Costs. Appellate ("App") Doc. # 43 in 11th Circuit Case No. 21-13430, but it was stricken by the 11th Circuit on 3-18-24. App Doc. # 105

q. Defendant agreed for the second time in the second Joint Pretrial Statement which it executed on 6-6-24, "The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 with regard to Plaintiff's civil actions under the law of the United States including: the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with regard to Plaintiff's civil action arising under the laws of the State of Florida including the Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01-769.11, as such claims are so related to the claims within the Court' original jurisdiction that they form part of the same case or controversy under Article III of the United Stated Constitution." R 141.

r.  Paragraph III B 1 of the Court' requirements attached to the Court
   Scheduling Order provides, "At the conclusion of the final pretrial
   conference, all pleadings are deemed to merge into the Joint Final
   Pretrial Statement which will control the course of the trial, " citing
   Local Rule   3.06(/e).   R 112.    Local Rule 3.06(e) provides, "All
   pleadings filed by any party prior to the filing of the pretrial statement
   shall be deemed to be merged therein, or in any subsequent pretrial
   order entered by the Court.  The pretrial statement and the pretrial order,
   if any, will control the course of the trial and may not be amended
   except by order of the Court in the furtherance of justice."


s.  The Joint Pretrial Statement executed by both parties was filed and was
   a stipulation by the parties and a representation to the district court  that
   it had jurisdiction notwithstanding.  It was a waiver in front of the court
   that it waived any jurisdictional defenses.


After fully participating in the case, and losing at the 11th Circuit,  Defendant

argued for the first time in its motion to dismiss on 6-13-24  that it is immune from

prosecution in the District Court.  R 145.    Defendant has waived that argument by

its litigation conduct as held under *Lapides* and the cases cited herein.

In *Ku v.  Tennessee*, 322 F.3d 431 (6th Cir. 2003),   *Ku* sued the state alleging

that the State's university denied him due process.  The district court agreed and

ordered the State to readmit Ku to the university.  *Id*. at 432.  Tennessee appealed on

the merits and on the grounds that the state is protected by the 11th Amendment,

even though the state did not raise the 11th Amendment until after the district court

decided the case on the merits.  Before that time, the State appeared without

objection to the district court's jurisdiction, defended the case on the merits, engaged

in substantial discovery and filed a motion for summary judgment. *Id.* at 432. It was only after a final adverse ruling in the district court granting plaintiff' a summary judgment and denying the State a summary judgment that the State raised the 11th Amendment immunity defense for the first time. *Id.* The district court ruled that the State had waived the defense by appearing and defending on the merits. *Id.*

The *Ku* court stated that in two recent cases, the U.S. Supreme Court was moving in the direction of concluding that the 11th Amendment immunity defense should be treated in the same way courts have traditionally treated personal jurisdiction rather than as a matter of subject matter jurisdiction—the two cases are *Schacht* and Justice Kennedy's concurring opinion therein and *Lapides*, *supra*.

In *Hunter v. Hamilton Cnty. Bd. of Elections*, 850 F. Supp. 2d 795, 801-02 (S.D. Ohio 2012), the district court held that the state agency waived its 11th Amendment immunity defense by its extensive participation in the litigation without raising the 11th Amendment immunity defense.

"Three limited exceptions to the Eleventh Amendment immunity exist:

> First, '[a] state remains free to waive its Eleventh Amendment immunity from a suit in a federal court, citing *Lapides v Board of Regents of the Univ. Sys. of Ga*., 535 U.S. 613, 618 (2002)." (Litigation conduct).

> "Second, a 'party may sue the state if …Congress has validity abrogated the state's immunity,' citing *Williams*, 477 F.3d 1282, 1301 (11th Cir. 2007), (citation omitted).

> Third, the doctrine of Ex Party Young permits a plaintiff to seek prospective injunctive relief against a state official in his

> official capacity for an alleged violation,' citing" 209 U.S. 123
> (1908) and *Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir.
> 2005)."

*Nasca v. Rudowicz,* 2021 LEXIS 214210  *7 (M.D. Ga. 2021).

The first "waiver" exception by litigation conduct is overwhelming in the case at bar to remove any 11th Amendment immunity as a bar to Plaintiff's claims.  The current law would not apply the second exception under the facts of this case, although Plaintiff maintains that the current law re the second exception above was wrongly decided.  The third exception is discussed in the next section below.

It is not the holdings of the U.S. Supreme Court that "courts are altogether disqualified from hearing certain suits brought against a State.  This interpretation, however, has been neither our tradition nor the accepted construction of the Amendment's text.  Rather, a State can waive  its *Eleventh Amendment* protection and allow a federal court to hear and decide a case commenced or prosecuted against it."  *Idaho v. Coeur D'Alene Tribe,* 521 U.S. 261, 267 (1997).

In *Stroud v. McIntosh,* 722 F.3d 1294 (11th Cir. 2013), the State agency defendant removed the case to federal court and then filed an answer that contained the 11th Amendment defense of immunity.  The plaintiff relied on *Lapides.*  *Stroud* stated, "**removal is a form of voluntary invocation of a federal court's jurisdiction** sufficient to waive the State's otherwise valid objection to ligation of a matter … in a federal forum."  *Stroud* at 1299.   Emphasis added. *Stroud* did not

limit its holding to only the removal situation by stating, "**removal is a form** of voluntary invocation of a federal court's jurisdiction." Emphasis added. Defendant's litigation conduct herein is **another form** of consent to federal jurisdiction. *Stroud* followed the *Lapides'* rationale. *Id*. at 1302. Defendant's litigation conduct is a form of voluntary invocation of the federal court's jurisdiction because it voluntarily participated in the case without taking action to seek the 11th Amendment's immunity—thus waiving that immunity and consenting to federal jurisdiction. ***Stroud*** **states that the paradox between allowing a State to both participate in a case yet asserting immunity at its pleasure "could generate seriously unfair results," citing *Lapides* at 1643.** Emphasis added. *Stroud* states, "To adopt the State's Eleventh Amendment position would permit States to achieve 'unfair tactical advantage[s]' if not in this case, in others." *Stroud* at 1645. *Stroud* states that there is a belief that those who wrote the Eleventh Amendment did not intend to create unfairness. *Id*. The court in the instant case erred by allowing the Defendant to achieve an unfair tactical advantage.

The Middle District of Florida in *Fla. Virtual Sch. v. K12, Inc,* 2023 LEXIS 176971 (M.D. Fla. 2023), Judge Presnell presiding, stated, "[A] States voluntary appearance in federal court amount[s] to a waiver of its Eleventh Amendment immunity," citing *Frederick v U.S.*, 386 F.2d 481, 488 (5th Cir. 1967). Judge Presnell stated, "Plaintiff cannot employ 'selective' use of immunity to achieve

litigation advantages," citing *Stroud* at 1302 and *Lapides* at 619-620. Judge Presnell recognized the unfairness that could result in selective use of immunity. *Fla. Virtual* at *6.

The Southern District of Florida followed the policy declarations and rationale of *Lapides* in *Castro v. Ky. Educ. Student Loan Corp,* 2017 LEXIS (*4 (S.D. Fla. 2017 by stating, "Waiver may be found by an entity's conduct in litigation because of the need for judicial consistency and fairness; otherwise an entity's 'actional preference or desire' may 'favor selective use of immunity' to achieve litigation advantages,'" citing *Lapides* at 620.

The Middle District, the Southern District of Florida and the 11th Circuit have all followed the U.S. Supreme Court's rationale of *Lapides*. "[t]he Eleventh Amendment bar to suit is not absolute," and "States may consent to suit in federal court …," *Verint, supra*, at *3. *Verint* states that the court will look to the specific **litigation choices** of the party asserting immunity, citing *Bd. of Regents of Univ of Wis Sys. v. Phx Int'l Software, Incl,* 653 F.3d 448, 463-64 (7th Cir. 2011).

"The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95 (1998). This Court has held, **"[a]n assertion of *Eleventh Amendment* immunity must be resolved before a court may address the merits**

**of the underlying claims(s),"** *Seaborn v. Department of Corrections,* 143 F.3d 1405, 1407, (11th Cir. 1998), **c**iting *Steel, supra.* Emphasis added. This is logical because the court can't rule on the merits unless it has jurisdiction. By allowing the court to rule on the merits, the DJJ was admitting that the court had jurisdiction. **Under *Seaborn* and *Steel,* the only way the district court could have resolved the jurisdictional issue before the merits was if the DJJ had raised that issue, and had a ruling on the issue before the DJJ invited the court to rule on the merits in its motion for summary judgment.**

The trial judge criticized the DJJ in stating, " No doubt it would have been better for the Department to seek dismissal of the ADEA claim on the basis of Eleventh Amendment immunity earlier in the case." R 91, p. 9 of 17. Nevertheless, it overlooked the prejudice suffered by Plaintiff, the unfairness of Defendant's litigation conduct and the choices that the Defendant made.

Plaintiff was prejudiced by Defendant's litigation conduct. Plaintiff was terminated on 8-18-17. R 1, ₱ 49. Plaintiff's Complaint was filed on 8-16-19; R 1;. Defendant's Answer, with no mention of the 11th Amendment immunity defense, admitted the date of discharge, and was filed on 11-4-19. R 20, ₱ 49. The FCRA claim is based on the statutory cause of action under § 760.10, Florida Statutes *seq*. The statute of limitations for a statutory liability in Florida is 4 years. § 95.11(3)(e) Florida Statutes. The 4-year statute of limitations on the FRCA claim did not expire

until 8-18-21. **Had Defendant timely raised the 11th Amendment defense at the threshold of the case when it filed its Answer on 11-14-19, as suggested by the trial judge and required by the authorities, Plaintiff would have had the opportunity to re-file his FCRA claim in the State court by the expiration of the statute of limitations on 8-18-21**. It is unfair and prejudicial for the court to allow Defendant to take advantage of its selective use of the immunity defense.

This Court has stated that "[t]he Eleventh Amendment immunity is a threshold issue that should be decided at an early stage of litigation." *Brown v. Fla. Dep't of Revenue office of Child Support Enforcement,* 697 Fed. Appx. 692, 693 (11th Cir. 2017). Defendant should have brought its argument on immunity to the attention of the Court as a threshold issue. Instead, it chose to attempt to have it both ways-- an argument on the merits first and if it lost, then argue jurisdiction as a back-up argument. Defendant waited until it lost its motion for summary judgment at the 11th Circuit and an impasse was declared in a mediation held after the 11th Circuit had ruled against the DJJ. R 127. This is contrary to the way jurisdictional arguments are, and required to be, handled and unfair litigation conduct under the dictates of *Lapides* and others cited above allowing for immunity to be waived.

In *Haven v. Bd. of Trs. of Three Rivers Reg'l Library Sys*., 69 F. Supp. 3d 1359 (S.D. Ga. 2014), the plaintiff, Haven, sued the Library under the ADEA for age discrimination and retaliation. The Library raised the 11th Amendment as a defense.

The trial court stated, "The court may find that the Library's Eleventh Amendment immunity strips it of jurisdiction to hear the case, or it may reach the **merits** of the Library's motion for summary judgment, **but it cannot do both.**" *Id.* at 1364. [2] Emphasis added. This statement is consistent with the ruling of this Court in *Seaborn* and the Supreme Court in *Steel, supra.* Defendant is trying to do both in this case—having had a ruling on the merits in its favor, being reversed by the 11th Circuit, and then raising the 11th Amendment defense after reaching an impasse at mediation. **The Court has already ruled on the merits by granting summary judgment to the Defendant—it cannot now reverse that tact and find the Court had no jurisdiction.** *Seaborn* and *Steel, supra.* Like in *Haven*, the court cannot do both. This would violate the dictates of *Schacht*, *Lapides*, *Stroud* , *Seaborn* and 11th Circuit and district courts in the 11th Circuit cited above. Defendant cannot "test the waters" on the merits and then, based on the result of that test, raise the jurisdictional issue for the first time. Defendant should not be allowed to "cross its fingers behind its back," hoping the court will rule in its favor and then, if it loses,

---

[2]Haven appealed the initial trial court judgment finding for the library on 11th Amendment grounds before a hearing on the merits. The District Court decision was remanded by the appeal to redetermine if the Library was an arm of the State. *Haven v. Bd. of Trs. of Three Rivers Reg'l Library Sys*., 625 Fed. Appx 929 (11 Cir. 2015).

On remand, the trial court determined that the library was not an arm of the state. *Haven v. Bd. of Trs. of Three Rivers Reg'l Library Sys*., 2018 LEXIS 179457 (S.D. Ga. 2018). The trial court then granted summary judgment for the library on the merits and denied summary judgment on the retaliation claim. The later case history does not disturb the trial court holding that the "The court may find that the Library's Eleventh Amendment immunity strips it of jurisdiction to hear the case, or it may reach the merits of the Library's motion for summary judgment**, but it cannot do both."**

argue that the court had no authority to rule against it and that it is entitled to a "do-over."

"[b]ut it (the State) may waive this privilege (sovereign immunity) and permit itself to be made a defendant in a suit by individuals, or by another State." *Beers v. Ark,.* 61 U.S. 527, 529 (1857). That is what the Defendant herein did by its litigation conduct.

Defendant could have appeared in the case only for the purpose of dismissing the lawsuit and committing no waiver, while giving Gargett notice of its purported defense. *See Vasseur v. Valdosta State Univ*., 2023 LEXIs 188405 *13-14 (M.D. Ga. 2023). Defendant passed up this opportunity and its subsequent conduct was waiver by litigation conduct.

In *Bell-Babineaux v. Florida Dep't of Juvenile Justice*, *supra,* the DJJ was represented by Samuel R. Mandelbaum of Mandelbaum, Fitzsimmons, Hewett & Cain, P.A., the predecessor law firm of Defendant's law firm in the instant case. In *Bell-Babineaux*, Mandelbaum timely filed, at the outset, a motion to dismiss based upon, *inter alia,* the 11th Amendment Immunity. *Id.* at *8. In *Bell-Babineaux*, Judge Kovachevich stated, "Unlike most subject matter jurisdiction issues, which cannot be waived by the parties, and must be raised by the court on its own initiative, the **Eleventh Amendment** does not automatically deprive a court of jurisdiction," citing *Wisconsin Department of Corrections v. Schacht,* 524 U.S. 381, 389 (1998). Judge

Kovachevich stated, "The **Eleventh Amendment** grants the State a legal power to assert a sovereign immunity defense should it choose to do so. " The DJJ chose to assert that defense in *Bell-Babineaux,* but not in the case at bar.

The DJJ litigation choice to consent to the litigation and not raise the 11th Amendment defense was a knowing tactical strategy by the DJJ and its attorneys and the DJJ must live with it. The DJJ can't have it both ways as stated in *Haven, supra,* The DJJ chose to fully participate in the litigation, culminating in its filing a motion for summary judgment seeking a judgment on the merits—which the court granted. Defendants strategy of "heads we win and tails you lose" is the epitome of unfairness.

## The Eleventh Amendment Immunity does not Apply to Claims for Prospective Relief

This argument is in the alternative to the above argument in the first section of this Brief. If Appellant is successful under the above argument, then this argument is moot. If Appellant does not succeed under the above argument, then this argument is applicable.

The "rule" of the "Ex Parte Young" exception to the 11th Amendment has been expanded from an injunction against individuals from enforcing an unconstitutional statue to prospective equitable relief in the form of reinstatement. The evolution is described below.

The trial court is relying on *Ex Parte Young,* 209 U.S. 123 (1908) for the proposition that one of the ways to avoid the 11th Amendment immunity is where the defendant is a person, with or without the State also being a party, and the person is the subject of an injunction. R 165, p. 10-11. In *Young*, the Attorney General of the State ("Young") brought the action for a writ of habeas corpus complaining that he was wrongfully being held in contempt of court because he was enforcing a legislative act argued to be unconstitutional because it set railroad rates too low. Young contended that because he was a party, the State was therefore a party and the federal court had no jurisdiction due to the 11th Amendment. *Young* at 149-150. *Young* held that the 11th Amendment was not violated by allowing the lower court to enjoin an officer of the state who was enforcing a law that was in violation of the federal constitution. *Id*. at 148. To reach its result, the court held that a State is not a party to a suit simply because the State Railroad Commission is also a party. *Id*. at 155.

The "*Young* Exception" has been expanded from an injunction to prevent enforcing an unconstitutional act to a claim for prospective relief in the form of reinstatement In *Lassiter v. Alabama A & M Univ*., 3 F.3d 1482 (11th Cir. 1993), the vice-president of the university sued the University, its President and its trustees under 42 U.S.C. § 1983 and a separate claim for breach of contract action against the university and its trustees. The trial court initially granted a summary judgment

in favor of all defendants which was reversed and remanded. *Id.* at 1485, citing the previous *Lassiter* case of *Lassiter v. Covington,* 861 F.2d 680 (11th Cir. 1988).[3] (The contract claim is not material for the instant appeal).

Lassiter sought reinstatement as well as damages. As to the § 1983 claim, the court held that Official capacity actions for prospective relief in the form of reinstatement are not treated as actions against the state and that the 11th Amendment does not insulate official capacity defendants from actions seeking the prospective relief of reinstatement. *Lassister,* 3 F.3d at 1485. *Lassiter* stated, "Official capacity actions seeking damages are deemed to be against the entity of which the officer is an agent." *Id.* at 1485, citing *Kentucky v. Graham*, 473 U.S. 159 (1985). Therefore, if suits against capacity agents of an employer for prospective equitable relief are an exception to the 11th Amendment, then suits

_____

[3] The history of the *Lassiter* ligation is as follows:

  a.  The district court entered a summary judgment in favor of all defendants.
  b.  The 11th Circuit reversed and remanded. 861 F.2d 680 (1988).
  c.  On remand, the district court dismissed official capacity defendants and the Board of Trustees on 11th Amendment grounds.
  d.  The case cited at 3 F.3d 1482 was granted an en *banc* hearing. 9 F.3d 1370.
  e.  The final *Lassiter* appeal was at 28 F.3d 1146 (11th Cir. 1994) and dealt only with the contract claim, which was remanded for a determination of factual issues. This decision was overruled on the contract question by *Hope v. Pelzer,* 536 U.S. 730 (2002).
  f.  Therefore, the rulings re the 11th Amendment in 3 F.3d 1482 are still good law. *Lassister* at 3 F.3d 148(1993) was cited with approval in *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir, 1995) and in *Lane v. Cent. Ala. Cmty. College*, 772 F.3d 1349, 1351 (11th Cir. 2014).

against the employer of the capacity agent should also be an exception to the 11th Amendment.  Especially so where reinstatement is the prospective equitable relief sought because an individual in his official capacity is not the employer and has not authority to grant reinstatement.    Only the employer has the authority to grant reinstatement. There should be no difference between  suing the state and suing its officers acting in their official capacities and prospective  equitable relief should be available in either situation.

In *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490 (11th Cir, 1995), former and present female employees of the Dep't sued the State, the Dep't and certain supervisors under Title VII for sexual harassment and a hostile work environment and under § 1983.   The court found that the 11th Amendment barred the § 1983 claims for monetary damages against the state.   *Id*. at 1502.   It stated that Official capacity actions seeking damages are deemed to be against the entity of which the officer is an agent—in *Cross* at 1503, citing *Lassiter,* 3 F.3d at 1485, *supra.*  The court also stated that the relief granted under Title VII is against the employer and the proper method for a plaintiff to recover under Title VII is by suing the employer, **either by naming the supervisory employees as agents of the employers or by naming the employer directly**.  *Id.* at 1504, citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).   In other words, under *Cross* and *Lassiter,*  it makes no difference in suing the employer if it is named as a defendant

or one names the agents of the employer who committed the discrimination. Gargett's claim against the DJJ for reinstatement should be treated just as if he had sued one of the DJJ's officers in their official capacity for reinstatement because it does not make no difference as to the equitable remedy of reinstatement.

Defendants in *Cross* contended on appeal, *inter alia*, that the 11th Amendment bars the § 1983 claims against them. The court held that the § 1983 claims seeking prospective injunctive relief are not treated as actions against the state and are not barred by the 11th Amendment. *Id*. at 1503. It held that the employees request for reinstatement are not barred by the 11th Amendment, citing *Lassiter,* 3 F.3d at 1485, *supra.*

In *Lane v. Cent. Ala. Cmty. College,* 772 F.3d 1349 (11th Cir. 2014), plaintiff sought reinstatement of his employment. The court reiterated its position that requests for reinstatement constitute prospective injunctive relief that fall with the scope of the *Ex Parte Young* exception and are not barred by the Eleventh Amendment. *Id* at 1349, citing *Cross* and *Lassiter, supra*. The court held that the fact that Lane's reinstatement would require the State to pay Lane's salary does not trigger Eleventh Amendment protection. *Id.* The court stated that "[s]uch an ancillary effect on the state treasury is permissible and often an inevitable consequence of the principle announced in *Ex Parte Young*." *Id.* Gargett requested reinstatement. That only difference between *Lane* and Gargett is that Lane sued the

president of the college. The *Young* principle should be construed that what is important is the relief sought --retrospective which is not allowed under the 11th, Amendment and the prospective relief of reinstatement, which is allowed under the 11th Amendment and not whether an individual with capacity is named as a defendant or not. An individual has no ability to reinstate employment because an individual is not the employer.

In *Kerce v. Fla. Dep't of Law Enforcement/Capital Police,* 2017 LEXIS 227933 (N.D. Fla. 2017), the court acknowledged that the Eleventh Amendment does not bar a plaintiff's claim for prospective equitable relief. *Id.* at *11. It held that reinstatement is considered prospective, declaratory relief, citing *Cross* and *Lane supra,* and stated that that "requests for reinstatement (of employment) constitutes prospective injunction relief that falls within the scope of the *Ex Parte Young* exception and, thus, not barred by the Eleventh Amendment," *Id.* at *12.

Finally, in *Tracy v. Fla Atl. Univ. Bd. of Trs*., 2017 LEXIS 190505 (S.D. Fla. 2017)("*Tracy II*"), plaintiff filed an action under 42 U.S.C. § 1983 against Florida Atlantic University, an arm of the State, and others, including University officials in their official and personal capacities. See *Tracy v. Fla Atl. Univ. Bd. of Trs*., 2016 LEXIS 173608 (S.D. Fla. 2016)(the underlying case). By the time of trial in *Tracy II,* the only remaining defendant was the University, an arm of the State. Plaintiff was seeking damages as well as reinstatement. The 11th Amendment immunity

was held to bar the plaintiff's claim for **retrospective** awards of back pay, compensatory damages, etc. **However, the court held that plaintiff's claim for reinstatement or front pay are prospective remedies, and that the University is not immune from such claims nor does the 11th Amendment immunity defense apply to such claims for relief, despite there being no individual defendants.** *Id*. at *5. The court stated that the issue of reinstatement is for the court, not the jury. *Id*. The parties agreed that if the plaintiff was successful at trial, that he was entitled to reinstatement or, if reinstatement is not practical, to front pay. *Id*. Again, Garget's Complaint plead for reinstatement and, in the alternative, front pay. R 1. Plaintiff's claim for reinstatement should survive despite that he didn't sue an individual, the trial court Judgment should be reversed, and the claim for reinstatement, and the other claims should be remanded for trial.

Judge Kovachevich was careful in *Bell-Babineaux, supra,* to point out that although she was dismissing the case based on the Eleventh Amendment, that the plaintiff had not sought prospective relief. This was an acknowledgement by the Judge that prospective relief is not barred by the 11th Amendment.

## Congressional Abrogation of the Eleventh Amendment as to ADEA Claims

The U.S. Supreme Court in *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000) determined that the ADEA contained a clear statement of Congress' intent to abrogate the States' immunity. However, *Kimel* held that in light of the

indiscriminate scope of the ADEA's substantive requirements, and the lack of evidence of widespread and unconstitutional age discrimination by the States, the court held that the ADEA was not a valid exercise of Congress' power under U.S. Const. amend. XIV, § 5. The ADEA's purported abrogation of the States' sovereign immunity was accordingly held invalid.

Current law is supportive of *Kimel*. Nevertheless, Plaintiff asserts that the rationale of *Kimel* was wrongfully decided and preserves its argument on this point for the record.

## Claim for Attorneys' Fees are not Barred by Eleventh Amendment Immunity

Under the district court's ruling, it was not necessary to rule on the attorneys' fee issue. *In re Kuck*, 116 B.R. 821 (S.D. Fla. 1990), holds that attorneys' fees and costs can be awarded against the state without regard to the Eleventh Amendment immunity, citing *Hutto v. Finney*, 437 U.S. 678, 694 (1979). Gargett pled for attorneys' fees and costs. R 1, ₱ 65. The attorneys' fee and cost claim is not barred by the 11th Amendment

## Conclusion

Appellant requests that the Order and Judgment being appealed be reversed and that Plaintiff's claims be remanded to the district court for adjudication, and for such other relief as appropriate under the circumstances.

## Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7) (B) because this document contains 10,814 words (less than the 13,000 words allowed) and the typeface requirements of Fed. R. App. P. 32(a)(5) and (6) because this document has been prepared in a proportionally spaced typeface using Microsoft Windows 11 in 14-point font size and Times New Roman type style.

Co-Counsel for Appellant,
/s/<u>James E. Aker.</u>

Dated: September 12, 2024.

### Signature Block of Counsels

**/s/** James E. Aker
TRUIST Bank Building
3400 S. Tamiami Trail, Ste. 101
Sarasota, Florida 34239
Telephone: (941) 780-2809
Facsimile: (941) 462-2022
E-mail: jimaker2537@gmail.com
Fla. Bar No.: 131026
Counsel for Appellant
and
AKER LAW FIRM, P.A.
/s/ E. Dusty Aker, Esq.
Fla. Bar No.: 657166
TRUIST Bank Building
3400 S. Tamiami Trail, Ste. 101

Sarasota, Florida 34239
Telephone: (941) 462-2020
Facsimile: (941) 462-2022
Email: dustyaker@akerlawfirm.com

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing document was e-filed through the Eleventh Circuit's ECF system on this 12th day of September, 2024 and opposing counsel will receive a copy of same via the Eleventh Circuit Clerk's E-filing Portal.

/s/James E. Aker
Co-Counsel for Appellant